Isaac Malvin MILSTID et al., acting by and through Edwin J. Curran, Jr., Guardian Ad Litem, and Floyd Milstid, Appellants,

v.

D. S. PENNINGTON, Jr., as Trustee in Bankruptcy for Floyd (NMN) Milstid, Appellee.

No. 17610.

United States Court of Appeals
Fifth Circuit.

June 25, 1959.

Rehearing Denied Sept. 4, 1959.

Edwin J. Curran, Jr., Herndon H. Wilson, Mobile, Ala., for appellants.

Irvin J. Langford, Mobile, Ala., J. B. Blackburn, Bay Minette, Ala. (Howell, Johnston & Langford, Mobile, Ala., on the brief), for appellee.

Before RIVES, CAMERON and JONES, Circuit Judges

RIVES, Circuit Judge.

The trustee in bankruptcy for Floyd Milstid brought this action against the bankrupt, his former wife, now Maggie Lee Milstid Allen, and their seven children—four of whom were minors—and against the Federal Land Bank to set aside two conveyances, each of a different 90-acre parcel of land, as fraudulent conveyances as to existing creditors of the bankrupt in that they (1) were voluntary and without consideration and therefore void under Title 20, Section 7 of the 1940 Code of Alabama and Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110, (2) were made in trust for the use of Floyd Milstid and are void or voidable under Title 20, Section 1 of said Alabama Code, and (3) were made with intent to defraud creditors and are void again under Title 20, Section 7 of said Alabama Code.

Without ruling on any actual intent to defraud creditors, the trial court found that there was no consideration for either deed, set both aside as voluntary conveyances, and ordered a sale of the two parcels subject to a valid oil lease and a mortgage to the Federal Land Bank for the purpose of applying the remaining proceeds of the sale among the creditors in bankruptcy.

Appealing here in forma pauperis, Floyd Milstid and his minor children primarily contend that the district court erred in holding that the conveyances were voluntary. Since we hold that the district court was clearly erroneous in ruling that the two deeds were not supported by valuable consideration, an examination of the facts is necessary.

The two 90-acre tracts of land were owned in fee simple by Floyd Milstid. He and his wife had mortgaged them on November 20, 1953, to the Federal Land Bank to secure a loan of $5,600.00. At the date of trial in the district court (October 6, 1958), the principal and interest were current and the balance amounted to $4,945.64. In September 1954, Milstid was indebted to the Bank of Atmore for $13,251.20 and was a co-signer of a $1,150.00 note of one son to that bank. At that time he was also indebted to the Baldwin County Bank for $1,900.25. Both of these debts were secured by chattel mortgages. At the date of trial, he was still indebted to these banks, in materially less amounts, and both banks were listed as creditors with provable claims.

Milstid and his wife, Maggie Lee Milstid (now Maggie Lee Milstid Allen), had been separated for about two months prior to September 18, 1954, and on that date they secured a divorce. Both parties subsequently remarried. On the date of the divorce, the two conveyances in question were made. Each deed attempted to convey a separate 90-acre tract which comprised all of the real estate then owned by Floyd Milstid. Both deeds were made subject to the Federal Land Bank mortgage and both were duly recorded. The pertinent portion of these

deeds is set out in the margin [1] and hereinafter will be referred to as Deed 1 and Deed 2. Appellants urge that the consideration of these two deeds was the property settlement, alimony and child support growing out of the divorce, as evidenced by the recitals in the deeds of "and the further consideration of the division of the property." While the divorce decree contained no allowance of alimony and confirmed no property settlement, it required Milstid to make $85 monthly payments for the support of the three minor children remaining in Mrs. Milstid's custody. On September 14, 1954, four days before the date of the divorce and the conveyances, Floyd and Maggie Lee Milstid entered into an agreement which provided for separation, child support and custody and for a property settlement the terms of which were not stated. This agreement recited that:

> "It is further agreed between the parties that a property settlement be made at this time of land and of personal property which settlement becomes a part of this agreement.

> "It is further agreed between the parties that each party does by these presents release any and all claims against any property which the other party retains under this personal property settlement, copy of which is attached hereto."

For at least eight months after Milstid had secured the divorce and had executed the two conveyances, the Bank of Atmore, the largest creditor in bankruptcy, continued to lend substantial sums to Milstid with and without security and with notice that the deeds had been executed and the divorce obtained.

Floyd Milstid was adjudged a bankrupt on November 5, 1956, over two years after the deeds were executed and not until after he had attempted a Chapter XIII proceeding to which his creditors had objected.

Each deed recited as consideration "for and in consideration of the sum of one ($1.00) Dollar and the further consideration of the division of the property." In Deed 1, the grantors are named as "Maggie Lee Milstid and Maggie Lee Milstid, Grantors," while in Deed 2, the grantors are named as "Floyd Milstid and Maggie Lee Milstid, Grantors." The legal effect of the obvious error of naming Maggie Lee Milstid twice in the first deed will be discussed later. In both deeds, the seven Milstid children received a grant subject to the existing Federal Land Bank Mortgage. Deed 1 was subject to the "reservation" (sic) of a life estate in Maggie Lee Milstid. Deed 2 was subject to the reservation of a life estate in Floyd Milstid. These reservations are not contained in the granting clause but appear after that clause and

1. The first deed in part read:
"Know All Men By These Presents, That I, Maggie Lee Milstid & Maggie Lee Milstid, Grantors, for and in consideration of the sum of One ($1.00) Dollar and the further consideration of the division of the property, to me in hand paid by Tommie Eugene Milstid, James Edward Milstid, Ester Veloise Milstid, Isaac Malvin Milstid, Floyd Milstid, Jr., Charles Rudolph Milstid, and Guy Loyd Milstid, Grantees, the receipt of which is hereby acknowledged, do hereby Grant, Bargain, Sell and Convey unto the said Grantees, the following described real property in Escambia County, Alabama, to-wit:
[Description of property.]
"The property aforesaid being conveyed subject to an existing mortgage due and owed to the Federal Land Bank, said life tenant assuming in her prorata share.
"Said conveyance being subject however to the following reservation; to-wit, life estate in and to said property being hereby reserved to Maggie Lee Milstid, together with all rents, royalties, minerals and timber during said life estate.
" * * * [Habendum]
"In Witness Whereof, I have hereunto set my hand and seal on this the 18 day of September, 1954.
(S) Floyd Milstid (Seal)
(S) Maggie Lee Milstid (Seal)"
The second deed is similar to the first, except that the grantors are "Floyd Milstid and Maggie Lee Milstid" and the life estate is reserved in Floyd Milstid. Of course, the description is of another 90-acre parcel.
To each deed is attached a notary certificate of general acknowledgment.

before the habendum clause. Both deeds were signed by Floyd Milstid and Maggie Lee Milstid and were properly acknowledged and recorded.

Since more than one year lapsed from the time of the conveyances until the filing of the petition in bankruptcy, the trustee proceeded under Section 70, sub. e(1) of the Act [2] which allows the trustee to assume the status of a creditor under state law. The law of Alabama voiding transfers made in fraud of creditors is found in Sections 1 and 7 of Title 20, Code of Alabama (1940). [3]

### I.

As to Deed 1, an initial question is presented before we consider the aspect of valuable consideration; that is, will the omission of the name "Floyd Milstid" as a grantor void the deed for indefiniteness? The appellee, in seeking to void this deed, relies on a statement in Johnson v. Goff, 1898, 116 Ala. 648, 22 So. 995, 996, which has been often repeated in Alabama decisions:

"* * * It is well settled by the decisions of this court that when a deed of conveyance is subscribed by more names than one, and some of the subscribers' names are not shown in the body or granting clause, while others are there shown, such instrument is not the deed, and does not convey the interest, of those whose names are omitted from the granting clause, and shown only in the signatures, *when there is noth-*

*ing in the deed to indicate an intention on their part to become grantors.*" (Italics supplied.)

Of course, the qualification which we have italicized is significant. In commenting upon this line of cases, the Alabama Supreme Court in Dinkins v. Latham, 1907, 154 Ala. 90, 45 So. 60, 62, 63 stated:

"* * * An examination of our cases will show that we have never held, nor could we reasonably hold, that where the conveyance does not expressly name a grantor in the granting clause, we may not discover in the deed of a husband and wife, as in other like cases, who are the grantors, by an examination of the entire instrument, and by giving effect to all its parts uphold the instrument. It would alter a very general and important principal of the law to sanction such a view. In every case where this court has held the instrument purporting to be a deed to be void, the name of the wife alone appeared in the body of the instrument while that of the husband was shown only, at the foot, by his signature to it."

In the Dinkins case the mortgage deed began, "To secure the payment of my note * * * I hereby grant * * *," and concluded, "Given under our hands and seals * * *." and was signed by both wife and husband. The court concluded that the obvious intention of the

---

2. 11 U.S.C.A. § 110, sub. e(1) reads:
   "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor."

3. "§ 1. *Conveyances of personal property in trust for the grantor are void as to creditors.*—All deeds of gift, all conveyances, transfers, and assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, are

void against creditors, existing or subsequent, of such person."
   "§ 7. *All instruments made to hinder, delay, or defraud persons, void as to them.*—All conveyances, or assignments in writing, or otherwise, of any estate or interest in real or personal property, and every charge upon the same, made with intent to hinder, delay, or defraud creditors, purchasers, or other persons of their lawful suits, damages, forfeitures, debts, or demands; and every bond, or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent, against the persons who are or may be so hindered, delayed, or defrauded, their heirs, personal representatives and assigns, are void."

parties could be effected without violating "the natural interpretation of language" by applying the rule of discovering by construction who were the grantors in a deed when they were not expressly named, holding:

"* * * therefore, that the mortgage was well executed, and is not to be defeated by any mere inappropriateness of composition, if it exist grammatically (which we do not concede), in using the pronoun 'I' instead of 'we' in the granting clause, where other language employed in it induces the conclusion that it was the intention of both the signers to become makers of the mortgage." Dinkins v. Latham, supra, 45 So. 60, 64.

While in the case at bar the testimonial clause is not in the plural but is in the singular, stating, "I have hereunto set my hand and seal," and while the name "Floyd Milstid" does not expressly appear in the granting clause of the deed, there is other evidence in the deed and in the surrounding circumstances to indicate an intention to include Floyd Milstid as a grantor. The two deeds executed at the same time should be construed in pari materia, and so construed their purpose becomes obvious. Deed 1 is immediately stricken with ambiguity and obvious mistake when the grantors are named "I, Maggie Lee Milstid and Maggie Lee Milstid, Grantors." More important, "Grantors" in the granting clause is in the plural and there are two signatures evidencing that both executed the instrument. Then, following the signatures is the notary's acknowledgment which certifies:

"I, C. LeNoir Thompson, a Notary Public, in and for said County in said State, hereby certify that Maggie Lee Milstid and Floyd Milstid, whose names are signed to the foregoing conveyance and who are known to me, acknowledged before me on this day that, being informed of the contents of the said conveyance, they executed the same voluntarily on the day the same bears date."

In view of the above facts and in consideration of other evidence, such as the fact that the property was owned exclusively by Floyd Milstid before the conveyance and the fact that Maggie Lee Milstid paid the taxes and mortgage indebtedness after the conveyance and erected a home on the described 90-acre parcel, the only reasonable construction under Alabama law is that the name "Floyd Milstid" was omitted from the granting clause by mistake of draftsman.[4]

## II.

As stated earlier, there is no question before us concerning the allegations of fraudulent intent on the part of Milstid in making the conveyances. Likewise, since there is no question in Deed 1 about the conveyance being in trust for the use of the grantor, Title 20, Section 1 of the Alabama Code is inapplicable; therefore, the remedy of the creditor must be found in Title 20, Section 7, Code of Alabama (1940), cited in note 3, supra. While the Alabama courts have held this statute to be merely affirmatory of the common-law rule prohibiting conveyances in fraud of creditors,[5] they have adopted a rigid rule, contrary to the weight of authority, holding that voluntary conveyances are invalid against existing creditors, regardless of the good faith in the transaction and regardless of the fact that the creditor is secured.[6] Therefore, we must determine whether this deed is

---

4. For well-known rules or construction to alleviate ambiguities in written instruments and to effectuate the intent of the whole instrument, see Nettles v. Lichtman, 1934, 228 Ala. 52, 152 So. 450, 452, 91 A.L.R. 1455. Hart v. Baptist Foundation of Alabama, 1956, 264 Ala. 632, 88 So.2d 681, 683; Porter v. Henderson, 1919, 203 Ala. 312, 82 So. 668, 670; Dinkins v. Latham, 1907, 154 Ala. 90, 45 So. 60, 62.

5. Gilliland v. Fenn, 1890, 90 Ala. 230, 8 So. 15, 9 L.R.A. 413.

6. First Nat. Bank of Birmingham v. Love, 232 Ala. 327, 336, 167 So. 703, 710–711;

voluntary or is based on *valuable* consideration which is necessary under Alabama law to defeat claims of existing creditors.[7]

■ Summarily, the recital of "for and in consideration of the sum of One ($1.00) Dollar" is not evidence of valuable consideration in a creditor's bill.[8]

■ Therefore, we must look to the phrase "and the further consideration of the division of the property." This recital, when read in the light of the evidence stated above, clearly shows that the consideration for the deeds was a property settlement or division accompanying the divorce. Two months prior to the date of the conveyances, the husband and wife, contemplating divorce, separated—she remaining at home and he living with his father. On September 18, 1954, the same date the deeds were executed, the divorce was granted to Mrs. Milstid. Four days earlier, a separation agreement indicated a division of the property in lieu of alimony.

Appellants cite two cases (Dixon Lumber Co. v. Peacock, 217 Cal. 415, 19 P.2d 233; McNally v. Emmetsburg Nat. Bank, 197 Iowa 602, 192 N.W. 925) which hold that a conveyance in lieu of alimony is not voluntary but supported by valuable consideration as to existing creditors. It is our opinion that Alabama follows that view, as indicated in the authorities cited in the margin.[9]

### III.

Two additional arguments as to Deed I pressed by the parties in both the lower

---

Drain v. F. S. Royster Guano Co., 231 Ala. 422, 165 So. 239; Horton v. Spears, 1939, 238 Ala. 464, 191 So. 622, 627.

7. In Allen v. Overton, 1922, 208 Ala. 504, 94 So. 477, 479, 480, the court succinctly stated the different effects that voluntary conveyances had on existing and subsequent creditors:

"If the grantor in a conveyance receives a benefit or the grantee suffers detriment as the consideration of the conveyance, then the consideration is valuable, and the instrument is not a voluntary conveyance. The inadequacy of the consideration, the difference between the value of the property and the consideration, with other facts, may indicate actual intent to defraud, but does not make the instrument voluntary. If the consideration of the conveyance is valuable, though inadequate, it is not void unless there are other facts showing the grantee (sic) knew of or participated in a scheme with the grantee to hinder, delay, or defraud his creditors. London v. [G. L.] Anderson Brass Works, 197 Ala. [16] 17, 72 South. 359.

"A voluntary conveyance is one resting on no valuable consideration. As to existing creditors when executed and delivered, it is void per se without regard to the intentions of the parties, unless the property is exempt from the payment of the debts of the grantor. As to subsequent creditors it is valid and operative, unless there was actual fraud in the transaction; and the burden of proving the existence of the actual fraud in the transaction rests upon the subsequent creditor."

8. See Shaffield v. Shaffield, 1948, 250 Ala. 381, 34 So.2d 591, 592–593, where the court states:

"Appellee is, and was, at the time the deed was executed and delivered, an existing creditor. Our cases are to the effect that the execution and delivery of a deed by a husband to a wife, on a recited consideration of $1 and love and affection, is a voluntary conveyance, supported by a good, rather than a valuable consideration. And is, therefore, void on its face against existing creditors of the grantor. On a bill filed by such a creditor to set aside such a conveyance, and subject the lands conveyed to the payment of his or her debt, parol evidence is not admissible to prove a valuable consideration. This has been the long settled law in this State."

9. In Allen v. Overton, 1922, 208 Ala. 504, 94 So. 477, 479–480, the court held that a recitation of consideration of assumption and payment of mortgage indebtedness in a conveyance by the husband to his wife was sufficient to give the deeds a *valuable* consideration so as to defeat the claims of creditors. In People's Bank of Red Level v. Barrow & Wiggins, 1922, 208 Ala. 433, 94 So. 600, 603, 604, the court held that payment of $1,000 to the wife for the release of her dower and homestead rights in 79 acres of land which her husband conveyed was based on a valuable consideration, making the transaction between her and her husband bona fide, so that her husband's creditors could not garnish that amount to satisfy a prior judgment. Likewise, in Keel v. Larkin, 1887, 83

court and here—that the reservation of the life estate in Maggie Lee Milstid tends to restrict the estate of the grantees as found in the granting clause, and that in the event of such conflict, the granting clause prevails over subsequent clauses under the doctrine of Henry v. White, 1952, 257 Ala. 549, 60 So.2d 149; and that the reservation of a life estate in the wife is a reservation in a stranger and therefore void—will not be decided on this appeal. If either argument has merit, the only effect will be that of destroying the wife's life estate and presumably accelerating the remainder interest in the children. These questions are not before the court. The controversy is between the trustee in bankruptcy who wishes to invalidate the conveyances and the members of the Milstid family who jointly wish to uphold the conveyances. The Milstid children and the mother are not adverse parties in this proceeding, notwithstanding the contentions of the guardian ad litem of the minor children. Any suit between the life tenant and remaindermen must be properly prosecuted with proper parties.

## IV.

■ The second deed, executed simultaneously with the first, reserves the life estate in the grantor, Floyd Milstid, with remainder to his children. This deed recites and is supported by the same valuable consideration discussed in Deed 1, at least as to the children's remainder interest. Certainly this deed more than meets the test laid down in Allen v. Overton, 1922, 208 Ala. 504, 94 So. 477, 479:

> "If the grantor in a conveyance receives a benefit or the grantee suffers detriment as the consideration of the conveyance, then the consideration is valuable, and the instrument is not a voluntary conveyance. * * *"

Appellee insists, however, that the reservation of the life estate in Floyd Milstid will vitiate the whole transfer under the provisions of Section 1, Title 20, Code of Alabama. This statute, footnote 3 supra, provides that transfers (in any form) of personalty made in trust for the grantor or transferor are void as against both existing and subsequent creditors. It has been construed as applying also to realty.[10] While the Alabama courts, in liberally construing this statute, have used encompassing language to indicate that any reservation of any trust or benefit, great or small,[11] either by express stipulation in the instrument or by secret private agreement,[12] whether there is fraudulent intent or not,[13] is void as to existing and subsequent creditors; they have mitigated that doctrine by ruling that, in the absence of actual fraud (evil intent) in the transaction, the assignment is void only

Ala. 142, 3 So. 296, a conveyance of certain lands to the wife in consideration of her relinquishment of dower in other lands was based on a valuable consideration. See also, London v. G. L. Anderson Brass Works, 1916, 197 Ala. 16, 72 So. 359. In Walker v. Walker, 1944, 245 Ala. 154, 16 So.2d 190, the suit was to quiet title and the question was whether an oral deed from husband to wife was based on a sufficient consideration so as to be within the exception to the statute of frauds (the wife was in possession). The court held that the release of $2,500 of alimony in arrears formed a sufficient consideration for the deed and that the case was within the exception provided for in the statute of frauds. Likewise, marriage is a valuable consideration, even a favored consideration for the conveyance of property as against existing creditors, but the conveyance must be made before the marriage in order to be taken out of the statute of frauds. Thomas v. Mickle, 1934, 228 Ala. 458, 154 So. 95; Nance v. Nance, 1888, 84 Ala. 375, 4 So. 699.

10. Pace v. Wainwright, 1942, 243 Ala. 501, 10 So.2d 755.

11. Tissier v. Wailes, Ala., 1905, 39 So. 924.

12. Pace v. Wainwright, 1942, 243 Ala. 501, 10 So.2d 755; L. W. & P. Armstrong v. Miller, 1939, 238 Ala. 17, 189 So. 74; Morton Hardware Co. v. Barranco, 233 Ala. 346, 1937, 172 So. 109, 110–111.

13. Stollenwerck v. Fourth Nat. Bank, 1921, 205 Ala. 548, 88 So. 659; Truitt v. Crook, 129 Ala. 377, 379, 30 So. 618; Morton Hardware Co. v. Barranco, supra, note 12.

to the extent of the benefit reserved, provided the benefit is of a separable nature,[14] such as a life interest in a trust estate.[15] In the case at bar, the question of actual intent to defraud creditors is not before us. The life estate reserved by the grantor is an interest separable from the remainder conveyed to his children, and, whether void or not under the Alabama law, all of the parties concede that it is an asset in the hands of the trustee in bankruptcy.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

14. American Trust & Savings Bank v. O'Barr, 1915, 12 Ala.App. 546, 67 So. 794; Southern Wesco Supply Co. v. Hammond, 1914, 11 Ala.App. 491, 66 So. 941. See, also, Hayes v. Westcott, 1890, 91 Ala. 143, 8 So. 337, 11 L.R.A. 488; Thornton v. Cook, 1893, 97 Ala. 630, 12 So. 403; Howell v. Bowman, 1892, 99 Ala. 100, 10 So. 640, 641, 645; Kidd v. Morris, 1901, 127 Ala. 393, 30 So. 508.

15. In Henderson v. Sunseri, 1937, 234 Ala. 289, 174 So. 767, where the debtor executed a deed transferring certain property to trustees of an existing trust and reserved a life estate in the income, the court held that only the life estate and benefit in income reserved to the settlor was subject to attack by subsequent creditors.